NOT FOR PUBLICATION (Docket No. 24)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| TIMOTHY SHAFFER, | : |
| Plaintiff, | : Civil No. 07-0031 (RBK/JS) |
| v. | : **OPINION** |
| ROBERT M. BALICKI, COUNTY OF GLOUCESTER, ANTONIO J. FRONTADO, STEPHEN BACJEWICZ, SHERIFF GIL MILLER, and JOHN DOES 1-10, | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

This matter arises out of an alleged attack upon Plaintiff Timothy Shaffer by corrections officers while he was incarcerated in the Gloucester County Jail. Before the Court is a Motion for Summary Judgment by Defendants Robert Balicki, County of Gloucester, Antonio J. Frontado, Stephen Bacjewicz, and Sheriff Gil Miller (Docket No. 24). For the reasons set forth below, the Motion is granted as to Defendants Balicki, County of Gloucester, and Miller, and denied as to Defendants Frontado and Bacjewicz.

**I.    BACKGROUND**

In November 2005, Plaintiff was incarcerated in the Gloucester County jail. Though it is somewhat unclear on the record, he was seemingly a pretrial detainee at that time. Pl. br. at 3.

1

On November 15, 2009, Plaintiff was exercising in his cell when he injured his shoulder. Plaintiff was not unfamiliar to shoulder injuries as sometime before his incarceration he was in a significant auto accident, which required him to have shoulder surgery. Nevertheless, as a result of the injury in his cell, Plaintiff requested medical attention and was taken to the infirmary by Officer Bacjewicz. Plaintiff received care from Marilyn Toye, a LPN who works for the Gloucester County Department of Corrections, who made an entry in his chart at 6:30 p.m.

Also in the infirmary at the time of Plaintiff's treatment was Officer Frontado, who was assisting another inmate. As Plaintiff was leaving after receiving treatment, Officer Frontado noticed that Plaintiff had a contraband metal clip on his jumpsuit and asked him to remove it. Plaintiff did so and threw it in the trash. Officer Frontado then questioned Plaintiff as to where he had obtained the clip. Plaintiff ignored Officer Frontado's inquiry, saying "its [sic] none of your business," and walked out of the infirmary. Def. Rule 56.1 stmt. at ¶ 13. Officer Frontado did not immediately respond, as he had to escort an inmate back to his cell. After doing so, Officer Frontado went to Plaintiff's cell, by his account to ask him about the contraband, but by Plaintiff's account, to attack him.

At this point, the parties only agree on a few things. First, they agree that all cells were in lockdown and inmates were not allowed to leave their cells. Plaintiff in particular was aware of this fact at the time of the alleged incident. Second, the parties agree that Officer Frontado went into Plaintiff's cell and they agree that Officer Bacjewicz was in the pod area during that time, but not actually in Plaintiff's cell. Third, all parties agree that Officer Bacjewicz had no physical contact with Plaintiff. Fourth and finally, all parties agree that Plaintiff's cellmate was not in the cell at the time of the alleged attack.

What they disagree about is exactly what happened when Officer Frontado went into Plaintiff's cell. Officer Frontado claims that he went into Plaintiff's cell to question him about the contraband and to advise him that his possession of it and his failure to answer questions about it were both infractions of the jail's procedures. Officer Frontado then gave Plaintiff a verbal warning, at which time he alleges Plaintiff became "belligerent." Def. Rule 56.1 stmt. at ¶ 16. Plaintiff allegedly told Frontado that he "didn't give a fuck" and he asked Frontado if he "was done." Id. at ¶ 17. Officer Frontado then turned to exit the cell. At that point, Plaintiff purportedly attempted to exit the cell as well, notwithstanding that he knew that all cells were on lockdown. Officer Frontado then attempted to push Plaintiff back into his cell and told him not to leave his cell several times before Plaintiff complied. Officer Frontado asserts that the "minor physical contact" with Plaintiff was necessary as he believed that Plaintiff posed a risk, since Plaintiff was "vigorously attempting to leave his cell without permission." Id. at ¶ 23.

Thereafter, Plaintiff complained to another officer about being assaulted and he was taken back to the infirmary. At 7:45 p.m., nurse Toye noted in Plaintiff's chart that he presented with abrasions under his right eye and on his right shoulder and collar bone. Pl. br., Ex. 2. Plaintiff also claimed neck, back, and hip injuries. He was taken to Underwood Memorial Hospital for follow up examination.

Plaintiff's account for the origin of his injuries is quite antipodal to Officer Frontado's. Plaintiff claims that when Officer Frontado entered his cell, he started yelling at Plaintiff and calling him "offensive names." Shaffer depo. at 18:16-19. Plaintiff was lying on his bunk at the time and Frontado was purportedly goading him to get down and fight. When Plaintiff refused, Frontado pretended to leave the cell but then turned and pulled Plaintiff off his bunk. He then

3

allegedly slammed Plaintiff off the wall, punched him in the face, kneeled on his throat, and pinned him between the door and the sink where he continued to punch him.  Also, for the duration of Plaintiff's attack, Officer Bacjewicz seemingly looked into Plaintiff's cell several times, but did nothing to intervene.  Plaintiff alleges that Bacjewicz "stood guard," preventing others from entering or leaving the cell.  Compl. at ¶ 14.

Plaintiff's alleged assault was later investigated by Wayne K. Young, Sr., an investigator with the Gloucester County Department of Corrections.  Young questioned Plaintiff and Officers Frontado and Bacjewicz, among others, and he watched a security tape of the pod where Plaintiff's cell was located.  Young then authored a report in which he concluded that 1) Plaintiff's allegation that he was assaulted was "substantiated," 2) the allegation that Officer Frontado used unreasonable force was "substantiated," and 3) the allegation that Officer Bacjewicz peered into Plaintiff's cell several times and never entered or took any action to help was "substantiated."  Pl. br., Ex. 6 at 11-12.

Plaintiff filed suit on January 3, 2007 with a seven count Complaint alleging 1) deprivation of federally protected rights under 42 U.S.C. § 1983 (against all Defendants), 2) promulgation of polices and practices that violated civil rights (against Balicki, County of Gloucester, and Sheriff Gil Miller), 3) assault and battery (against all Defendants), 4) deliberate indifference (against all Defendants), 5) intentional conduct (against all Defendants), 6) conspiracy (against all Defendants), and 7) joint and several liability (against all Defendants).  Pursuant to Defendants' Motion to Dismiss, this Court dismissed Counts 4, 5, and 7; and dismissed Count 6 as to the County only.  See Docket No. 8.  Defendants filed the present Motion for Summary Judgment on November 2, 2009, and Plaintiff timely responded.

II.     **STANDARD**

Summary judgment is appropriate where the court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"[T]he party moving for summary judgment under Fed.R.Civ.P. 56(c) bears the burden of demonstrating the absence of any genuine issues of material fact." Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party satisfies its burden, the nonmoving party must respond by "set[ting] out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Id.

III.     **DISCUSSION**

At the outset, all parties have agreed that the claims against Defendants Balicki, County of Gloucester, and Miller cannot be sustained. See Def. br. at 7-12; Pl. br. at 1 ("Plaintiff does

5

not contest the dismissal [of] Sheriff Gil Miller, Robert M. Balicki or the County of Gloucester."). Therefore, the Court grants Defendants' Motion as to those Defendants. Thus, the only remaining Defendants are Officers Frontado and Bacjewicz, and the only remaining claims are Count 1 (§ 1983 claim), Count 3 (assault and battery), and Count 6 (conspiracy). As to this last claim, Plaintiff responded to Defendants' brief under the mistaken assumption that Count 6 had already been dismissed. See Pl. br. at 1. However, that understanding was in error,[1] and for the reasons set forth below, the Court cannot grant summary judgment on that claim.

In general, Officers Frontado and Bacjewicz argue that they are entitled to summary judgment on three grounds: 1) they are entitled to qualified immunity, 2) Plaintiff has failed to offer any evidence of a conspiracy, and 3) Plaintiff has failed to offer causation evidence linking his injuries to their alleged actions. Plaintiff responds that neither officer is entitled to qualified immunity since his right to be free from malicious attack was clearly established, and Officer Bacjewicz in particular had a duty to intervene. As to the causation argument, Plaintiff offers that he need only show the degree of force used and not the degree of harm. The Court agrees with Plaintiff.

### A. Qualified Immunity

Both Frontado and Bacjewicz argue they are entitled to qualified immunity. Qualified immunity protects government officials from liability for civil damages where their performance of discretionary functions "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

---

[1] The Court's July 31, 2007 Order only dismissed Count Six as to Defendant County of Gloucester, not as to any of the other Defendants. See Docket No. 8.

Government officials are entitled to qualified immunity unless, 1) "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional right," and 2) "the right was clearly established" at the time of the violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). A right is clearly established if "'[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "If officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." Malley v. Briggs, 475 U.S. 335, 341 (1986). The Saucier two-part inquiry is no longer mandatory, and courts are permitted to use discretion as to which prong to apply first. Giles v. Kearney, 571 F.3d 318, 325 (3d Cir. 2009) (citing Pearson v. Callahan, 129 S. Ct. 808, 818 (2009)). Qualified immunity is a question of law, but disputed issues of material fact will preclude summary judgment on qualified immunity. Id.

  The constitutional right at issue here is Plaintiff's right to be free from excessive force. Plaintiff's right arises under the Due Process clause of Fourteenth Amendment and not the Eighth Amendment, since he is a pretrial detainee and not a convicted inmate. See Fuentes v. Wagner, 206 F.3d 335, 341-42 (3d Cir. 2000). However, since the Eighth Amendment provides at least "a floor" for a pretrial detainee's rights, see Kost v. Kozakiewicz, 1 F.3d 176, 188 n.10 (3d Cir. 1993), jurisprudence developed under that Amendment applies with equal force. See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983).

  Under the Eighth Amendment, prisoners have a right to be free from excessive force. See Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). The test for whether an excessive force claim is actionable is "'whether force was applied in a good-faith effort to maintain or restore discipline,

or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 78 U.S.L.W. 3478, 2010 WL 596513, at *2 (U.S. Feb. 22, 2010) (quoting Hudson, 503 U.S. at 7). A court must consider the following factors in answering that question:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002) (citing Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Hudson, 503 U.S. at 7)). The critical inquiry in an excessive force claim is not the degree of resultant harm or the existence of serious injury, but rather the nature of the force. See Wilkins, 2010 WL 596513, at *2.

### 1. Officer Bacjewicz

Officers Bacjewicz and Frontado offer different arguments in support of qualified immunity. Officer Bacjewicz essentially argues that since it is not alleged that he had any physical contact with Plaintiff, he did not violate Plaintiff's constitutional rights. He claims that his entire involvement was limited to looking in on Plaintiff's cell "once or twice" and that "he did not notice anything unusual." Def. br. at 14. However, Officer Bacjewicz's analysis misses the mark.

Officer Bacjewicz's argument seems based on the notion that because he did not directly participate in the alleged attack, he cannot be liable for an excessive force claim. This argument has been conclusively foreclosed. The Third Circuit has held that where a corrections officer fails to prevent other officers from using excessive force, and where the officer has a "realistic and reasonable opportunity to intervene," the officer is directly liable under § 1983. See Smith v.

Mensigner, 293 F.3d 641, 650-51 (3d Cir. 2002).  The court reasoned "[t]he approving silence emanating from the officer who stands by and watches as others unleash an unjustified assault contributes to the actual use of excessive force, and we cannot ignore the tacit support such silence lends to those who are actually striking the blows." Id. at 651.  Here, Plaintiff has submitted evidence to show that a genuine issue of material fact exists as to whether Bacjewicz was a direct participant in the alleged attack.  The report from investigator Young shows that even in the eyes of Gloucester County Department of Corrections, Bacjewicz's actions were suspect.  The record seems to show that he could have intervened, but perhaps purposely did not.  Thus, this Court cannot grant him qualified immunity on the basis that he did not participate.

To the extent that Officer Bacjewicz's argument is based on the notion that Plaintiff's right to be free from excessive force was not clearly established, that argument also fails.  The use of malicious and sadistic force is "*always* in violation of clearly established law." Thomas v. Ferguson, 361 F. Supp. 2d 435, 442 n.7 (D.N.J. 2004) (citing Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002); Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002)).  But the conclusion that force was malicious and sadistic is a legal one, reached after viewing the facts of a particular case through the lens of the five factors described above.  Cf. Giles, 571 F.3d at 326-28.  Thus, where genuine issues of material fact exist about the amount and justification for the force used – i.e., whether it was used in a good faith effort to restore order – qualified immunity cannot be granted on a summary judgment motion. Id. at 327-28.  Here, Plaintiff has submitted his own deposition testimony and the testimony and report of investigator Young to show that it is disputed whether Officer Frontado used justified force.  Therefore, the Court cannot grant Officer Bacjewicz qualified immunity and summary judgment.

### 2. Officer Frontado

Likewise, Officer Frontado is not entitled to qualified immunity. Frontado's essential qualified immunity argument is that he did not attack Plaintiff at all, and that he only used mild, justified force. See Def. br. at 16. Whether Frontado was justified in the use of force and the quantity of force used are genuinely in dispute. In opposition to summary judgment, Plaintiff has submitted, inter alia, his own deposition testimony claiming an attack, medical records showing something happened to him between his first and second visit to the infirmary, and the Young report showing that Plaintiff's claims were substantiated. See Shaffer depo. at 18-21; Pl. br., Ex. 2; Pl. br., Ex. 6 at 11-12. This evidence raises meaningful doubt about whether Frontado used limited or necessary force against Plaintiff. Therefore, the Court cannot grant Officer Frontado qualified immunity and summary judgment.

### B. Conspiracy Claim

As noted above, this Court previously dismissed Count 6 (conspiracy) only as against Defendant County of Gloucester. Defendants thus briefed why summary judgment should be granted on the conspiracy claim as to the remaining parties. Although Plaintiff did not respond to Defendants' arguments, operating under the mistaken belief that the Count had been previously dismissed, the claim is still validly before the Court. Officers Frontado and Bacjewicz therefore bear the burden of showing why summary judgment should be granted. See Aman, 85 F.3d at 1080. They have not met their burden.

As an initial matter, the exact contours of Count 6 are unclear. Plaintiff seems to state a claim for civil conspiracy under § 1983 and to state a claim for civil conspiracy under state law. See Compl. at ¶¶ 44-47. To state a claim for a civil conspiracy under § 1983, "a plaintiff must

prove that persons acting under the color of state law conspired to deprive him of a federally protected right." Ridgewood Bd. of Educ. v. N.E. ex. rel. M.E., 172 F.3d 238, 254 (3d Cir. 1999). Alternatively, a civil conspiracy under New Jersey law is the "combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or an injury upon another, and an overt act that results in damage." LoBiondo v. Schwartz, 970 A.2d 1007, 1029-30 (N.J. 2009) (quotations removed).

Frontado's and Bacjewicz's argument in support of summary judgment is that no evidence exists that they were involved in any actions against Plaintiff. Def. br. at 18. However, the Court need look no further than the Young deposition to see that whether these officers conspired together is genuinely in dispute. See Young depo. at 42:21-25 ("Bacjewicz was acting strange, keep [sic] peeking and I believe it was – in 216. And one could wonder why. You know, I guess he was checking on Frontado to make sure that he was okay, but it was just suspicious."). In addition, the Young report concludes that the allegation that Bacjewicz looked into Plaintiff's cell several times and took no action was "substantiated," thus further creating a genuine issue of material fact. See Pl. br., Ex. 6 at 12. Therefore, the Court must deny the Motion as to Count 6, the conspiracy claim.

    **C.**    **Causation**

Officers Frontado and Bacjewicz also argue that they are entitled to summary judgment because Plaintiff has failed to offer causation evidence linking his injuries to their alleged actions. Def. br. at 19. They argue that his claim fails because he has not produced expert reports linking his claimed permanent injuries to the alleged attack, as opposed to the injuries

being mere pre-existing conditions. Def. br. at 20-21. The Court can dispose of these arguments in short order.

Officers Frontado and Bacjewicz seem to labor, at least in part, under the belief that Plaintiff must show serious injury to show a constitutional violation. See Def. br. at 19 ("Medical personnel did not identify any significant injuries as a result of an alleged 'beating.'"). Their belief is mistaken. See Wilkins, 2010 WL 596513, at *2 (holding the critical inquiry in an excessive force claim is not the degree of resultant harm or the existence of serious injury, but rather the nature of the force); Hudson, 503 U.S. at 9 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." (citation removed)). Certainly Plaintiff must provide some evidence that each of his claimed injuries were caused by the Defendants' alleged actions in order to recover for them. Cf. Rivas v. City of Passaic, 365 F.3d 181, 193 (3d Cir. 2004) (holding § 1983 plaintiff must show that defendant's actions were the proximate cause of the violation of his federally protected right). But for purposes of surviving summary judgment, Plaintiff need only produce evidence showing a genuine issue of material fact as to the degree of force used. He has done so.

Plaintiff has produced some evidence that he had injuries (e.g., abrasions), and some evidence that these injuries were seemingly the result of Officer Frontado's and Officer Bacjewicz's actions. See Shaffer depo. at 18-21; Pl. br., Ex. 2 (infirmary chart); Pl. br., Ex. 6 (Young report). His evidence supports that perhaps his injuries, be they permanent or be they minor, were the result of a malicious and sadistic use of force. While certainly he has not produced enough evidence as yet to link any permanent injury to the Defendants' actions, he has

produced sufficient evidence to survive the pending Motion for Summary Judgment.[2]

### D.  John Does 1-10

Finally, the Complaint lists as Defendants John Does 1-10. Under Federal Rule of Civil Procedure 21, "the court may at any time, on just terms, add or drop a party." A court may drop John Doe defendants under this rule. See Blakeslee v. Clinton County, 336 Fed. Appx. 248, 250 (3d Cir. 2009); Adams v. City of Camden, 461 F. Supp. 2d 263, 271 (D.N.J. 2006). Because discovery is now complete, see Docket No. 22, because Plaintiff has failed to identify any John Doe Defendants, and because he has not moved to amend the Complaint, the Court dismisses John Does 1-10.

### IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion for Summary Judgment as to Defendants Sheriff Gil Miller, Robert M. Balicki, and the County of Gloucester. The Court **DENIES** the Motion as to Defendants Frontado and Bacjewicz. Finally, the Court **DISMISSES** John Does 1-10. An accompanying Order shall follow.


Date:   3-10-10                                   /s/ Robert B. Kugler
                                                  ROBERT B. KUGLER
                                                  United States District Judge

---

[2] Officers Frontado and Bacjewicz also rely on N.J. Stat. Ann. § 59:9-2(d) for the proposition that the recovery of pain and suffering damages against a "public entity" are limited to certain circumstances. Def. br. at 21. However, that provision does not apply to this case because, among other reasons, neither Frontado nor Bacjewicz is a "public entity." See N.J. Stat. Ann. § 59:1-3 ("'Public entity' includes the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State.").